UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Karen LaBranche**

      **v.**                       Case No. 14-cv-566-PB
                                  Opinion No. 2016 DNH 197
**Frisbie Memorial Hospital, et al.**


### MEMORANDUM AND ORDER

Karen LaBranche was terminated from her job as an operating room nurse at Frisbie Memorial Hospital in Rochester, NH. LaBranche claims that when she was terminated, she was on medical leave protected by the Family Medical Leave Act (FMLA). She now brings a lawsuit against the hospital and three hospital employees, alleging that the defendants interfered with her rights under the FMLA; retaliated against her for exercising those rights; defamed her after she left the hospital; and negligently caused her emotional distress.  The defendants have filed a motion for summary judgment, which I grant in part and deny in part.

### I.  BACKGROUND

Karen LaBranche began work as an operating room nurse at Frisbie Memorial Hospital in November 2008, and remained in that position until her termination on January 9, 2014.  Doc. No. 1 at 2, 6-7.  During her first few years at Frisbie, from 2009 to

2011, LaBranche underwent four performance evaluations.  The evaluations were generally positive, although she was admonished for engaging in "emotional outbursts" with other staff.  See Doc. No. 19-20 at 4.  She was also told, among other things, to "not allow her emotions to affect job performance" and to "work on communication with other staff, particularly when angry or upset."  Id. at 3-4, 10.  On her November 2010 evaluation, LaBranche commented that she had "developed a 180 [degree] turn in my attitude – Honestly wasn't aware of how I came off."  Id. at 17.  Other aspects of her evaluations were quite positive, including praise of her "circulating skills," availability, experience, and ability to function in emergency situations.  Id. at 2-3, 7.

    In September 2011, LaBranche took medical leave to repair a meniscus tear in her left knee.  Doc. No. 19-1 at 4.  Four days after commencing leave, she received a letter from Pamela Lord, Frisbie's benefits manager, stating that her leave was conditionally approved as FMLA leave, provided that LaBranche submit a certification from her doctor that she had a "serious health condition."  Id.  The certification form is known as a "WH-380-E Form."  Id.  Included with Lord's letter was a "Notice of Eligibility and Rights & Responsibilities form," also known as a "WH-381 Form," which provided information about LaBranche's

2

rights and responsibilities under the FMLA.  Id.  In response to
the request for certification, LaBranche's orthopedic surgeon,
Dr. Robert Harrington, sent a copy of his treatment notes from
the surgery, which Frisbie accepted in lieu of a completed WH-
380-E Form.  Id.  After several weeks spent recovering from
surgery, LaBranche returned to work.  Id.

The next year, in November 2012, LaBranche had another
performance evaluation.  Although she "[e]xceed[ed]"
expectations in several categories, LaBranche also received a
"Needs Improvement" with respect to "[d]evelop[ing] and
maintain[ing] a professional relationship with physicians,
peers, patients, and families."  Doc. No. 19-20 at 26.  In
addition, she was warned not to "project [her] mood onto others"
and told to "[l]et go of grudges and move on from altercations."
Id. at 28.  LaBranche disputed that evaluation and refused to
sign it until the following year, when she was allegedly told
that she needed to sign the form to receive a pay raise.  See
id. at 29, 35; Doc. Nos. 12-3 at 15; 19-10 at 3-5.

A few months later, on January 24, 2013, LaBranche took
another medical leave to have a second knee surgery.  Doc. No.
19-1 at 4.  Like LaBranche's previous leave, she received a
letter from Lord, the benefits manager, notifying her that her
absence would be conditionally approved as FMLA leave provided

3

that she submit a certification from her doctor.   <u>Id.</u> at 4-5.
Lord again included a WH-381 Form with her letter that notified
LaBranche of her rights and responsibilities under the FMLA.
<u>Id.</u> at 5.  This notice stated, among other things, that
LaBranche had "a right under the FMLA for up to 12 weeks of
unpaid leave in a 12-month period," calculated on a "rolling"
basis.  Doc. No. 19-7 at 4.  Like her previous leave, LaBranche
had her surgeon send Frisbie a copy of the treatment notes from
the surgery, and Frisbie accepted them in lieu of a completed
WH-380-E Form.  Doc. No. 19-1 at 5.

　　　　Six weeks after leaving work, on March 8, 2013, LaBranche's
doctor cleared her to "return to work on a graduated basis."
Doc. No. 19-8 at 17.  The parties agree that she returned to
work sometime after March 8, but the exact date is unclear.[1]  <u>See</u>
Doc. No. 12-4 at 9, 15-16.  The parties also agree, however,

---

[1] In her complaint, LaBranche indicated that she took her leave
of absence from "January 24 to March <u>24</u>, 2013."  Doc. No. 1 at 4
(emphasis added).  In her summary judgment papers, however, she
noted that her doctor released her to return to work on March <u>7</u>,
2013, but stated that "the date [LaBranche] returned is not in
the record."  Doc. No. 19-1 at 5.  For its part, Frisbie states
that LaBranche "returned to work with limited hours <u>through</u>
<u>March 24</u>, 2013."  Doc. No. 12-1 at 6 (emphasis added).
Meanwhile, in her deposition, Lord indicated that LaBranche
"would have come back to Frisbie" "sometime after March 8,
2013," but that she was "not sure of the exact day that she
returned to work."  Doc. No. 12-4 at 9, 15.

that LaBranche used up "at least six weeks" of FMLA leave during this absence.  See id. at 9.

Throughout 2013, LaBranche claims that Frisbie's Director of Surgical Services, Dianne O'Connell, a named defendant, "antagonized" her.  Doc. No. 1 at 4.  O'Connell allegedly called LaBranche into her office "to advise her that others were complaining about her."  Id.  O'Connell also allegedly "threatened that she had a suspension-from-work form in LaBranche's file."  Id.  When LaBranche asked for more information about the alleged complaints and O'Connell's apparent threat to suspend her, O'Connell "could not substantiate those claims with examples of who had said what, when, or why."  Id.

In November 2013, LaBranche was suspended from work for four days following an altercation where she said "fuck you" to a co-worker in the operating room.  Doc. No. 12-3 at 15-16.  She later received a "Report of Counseling Interview" which indicated, among other things, that she "does not communicate with several co-workers" and that "[h]er inability to communicate appropriately with staff is not conducive to effective team work and poses a risk for patient safety."  Doc. No. 12-1 at 6.  LaBranche was warned that "[a]ny subsequent incidents of unprofessional behavior . . . will result in

immediate termination of employment." Id. LaBranche admitted

that her behavior "was very unprofessional and it was not

appropriate." Doc. No. 12-3 at 16.

Soon after her suspension, on December 11, 2013, LaBranche

began another medical leave to receive treatment for mental

health issues. Doc. No. 19-1 at 5. In response, Lord again

sent a letter granting conditional approval for FMLA leave,

provided that LaBranche submit certification from her doctor.

Id. at 5-6. Lord's letter also contained the same eligibility

notice as previously provided informing LaBranche of her rights

and responsibilities under the FMLA. Id. This notice informed

LaBranche that she was eligible for FMLA leave and had a right

under the FMLA for "up to 12 weeks of unpaid leave in a 12-month

period," calculated on a "rolling" basis. Doc. No. 19-11 at 3-

4. The notice also stated the following:

> You must be reinstated to the same or an equivalent job
> with the same pay, benefits, and terms and conditions of
> employment on your return from FMLA-protected leave. (If
> your leave extends beyond the end of your FMLA entitlement,
> you do not have return rights under FMLA.)
>
> Id. at 4.

Just over a week later, on December 19, 2013, LaBranche's

primary care physician, Dr. Deborah Harrigan, submitted a

completed WH-380-E Form to Frisbie. Doc. No. 19-13. The form

stated that LaBranche's medical condition began on December 11,

6

2013 and would last for "~ 2 mos." <u>Id.</u> at 4.  Harrigan noted
that LaBranche was "unable to work at all at present." <u>Id.</u> at
3.  The form did not provide a specific date on which LaBranche
planned to return to work.  <u>See</u> <u>id.</u> at 4.

Six days later, on December 24, 2013, Lord sent an email to
O'Connell, the Director of Surgical Services.  Lord wrote:
"Provider is putting her out for 2 months starting 12/11/13.
I'll send her STD forms and we'll take action on 1/9/14.  I've
put it on my calendar."  Doc. No. 19-14 at 2.  That same day,
Lord sent LaBranche another letter.  This letter notified
LaBranche of her eligibility for short-term disability benefits,
but made no mention of her FMLA leave.  Doc. No. 19-15 at 2.

In addition to Lord's letter addressing LaBranche's right
to disability benefits, Frisbie asserts that it also sent
LaBranche a "Form WH-382" stating that her FMLA leave request
had been approved.  <u>See</u> Doc. Nos. 12-1 at 8; 12-4 at 13; 19-1 at
6.  LaBranche claims, however, that she never received the form.[2]
Doc. No. 19-17 at 3.

---

[2] Frisbie asserts that during her deposition, LaBranche admitted
that she was aware her FMLA leave had been approved because she
"had got something in the mail."  Doc. Nos. 12-1 at 8; 12-3 at
19.  In her declaration, however, LaBranche stated that she was
referring to having received the <u>conditional</u> approval of her
FMLA on December 11, not the full approval that Frisbie alleges
was sent on December 24.  Doc. No. 19-17 at 3.  To support her
case, LaBranche points out that Lord's December 24th cover
letter addressed <u>only</u> her disability benefits and made no

Roughly two weeks later, on January 9, 2014, LaBranche was terminated.  In a letter dated that day, Frisbie Vice President of Human Resources Carol Themelis, another named defendant, wrote to LaBranche:

> Your FMLA and its associated job protection ended on January 9, 2013 [sic] and your provider has indicated that you remain totally disabled.  After examining the staffing needs of Surgical Services it has been determined that the position you held as an RN in the Operating Room must be filled.  Therefore, this letter confirms your separation from employment effective today, January 9, 2013 [sic].[3]

Doc. No. 19-3 at 2.  After receiving the letter, LaBranche called Lord to tell her that she still had FMLA time remaining and wished to return to work, pending clearance from her doctor.  Doc. No. 19-1 at 7.  Lord told LaBranche that it was too late and the decision to terminate her had been made.[4]  Id. at 8.

---

mention of her FMLA leave.  Doc. No. 19-1 at 7.  In response, Lord said in her deposition that "[d]esignation notices are sent at time of approval of FMLA . . . [a]ll the time" and "[t]here are no cover letters sent with these designation forms, they're self-explanatory."  Doc. No. 19-4 at 15.

[3] The letter appears to get the date wrong.  LaBranche was terminated on January 9, 2014, not 2013.  See Doc. No. 19-3 at 2.

[4] In addition to calling Frisbie, LaBranche also called her doctor, Dr. Harrigan, to ask why Harrigan would have told Frisbie that she remained "totally disabled."  Doc. No. 19-1 at 8.  According to LaBranche, "Dr. Harrigan had not told anyone at Frisbie that Ms. LaBranche remained totally disabled on or around January 9, 2014," and had only indicated that she was disabled in the certification form she submitted to Frisbie. Id.; see Doc. No. 19-4 at 23-24.

To justify the termination, Lord asserted that she had been "carefully tracking" LaBranche's FMLA leave and determined that it had expired on January 9, 2014.  Doc. No. 12-4 at 20.  During discovery, however, LaBranche obtained a Frisbie payroll document with handwritten notations that Lord admitted were hers.  Doc. Nos. 19-12 (document); 12-4 at 19 (Lord admission).  The notes on the document state, among other things, that LaBranche was "out 12/11/13" and "176.25 FMLA remains until 1/24/14."  Doc. No. 19-12.  According to LaBranche, this document shows that she had FMLA leave remaining when she was fired on January 9.[5]  See Doc. No. 19-1 at 7.

After her termination, LaBranche applied for other nursing positions, and in March 2014 she took a job as a travel nurse at a facility in Colorado.  Doc. No. 19-1 at 9.  Four months later, however, she returned to New Hampshire to seek employment closer to home, and worked with a placement agency to find nursing

---

[5] LaBranche claims that she had 16.25 hours of leave remaining when she was fired, but also states in a footnote that she "may have had as much as two weeks remaining" because "[t]he record does not include the date or schedule when Ms. LaBranche returned from the FMLA leave taken for her right knee surgery on 1/24/13."  Doc. No. 19-1 at 8, n.2.  Frisbie, on the other hand, maintains that LaBranche's FMLA-protected leave expired on January 9, 2014.  Doc. No. 12-1 at 8.  Frisbie claims that LaBranche made a "mathematical miscalculation" in determining that she still had 16.25 hours of leave remaining when she was fired.  Doc. No. 21 at 1-2.

positions.  Id.  During her job search, a placement agency
associate named Jean Beauchamp informed LaBranche that her
reference from Frisbie could not be used because Frisbie nurse
Amanda Peaslee, a named defendant, had told Beauchamp on the
phone that LaBranche "was not Frisbie's standard of a good
nurse" and was not eligible for rehire.  Id.  LaBranche asked
Beauchamp if she would put her recollection of Beauchamp's
conversation with Peaslee in writing, but Beauchamp declined,
citing company policy.  Doc. No. 12-3 at 24.  Peaslee's comments
made LaBranche "[s]hocked and upset" and caused her to remove
Frisbie as a reference source.  Doc. No. 19-1 at 10.

For her part, Peaslee denies that she told Beauchamp that
LaBranche "was not a good example of Frisbie's standard of a
good nurse."  Doc. No. 12-1 at 18.  She claims instead that she
"was asked if [LaBranche's] nursing skills were 'excellent,
standard, or poor' and I stated standard, or some similar
language with options provided by the recruiter."  Id. at 18-19.
"Jean then asked me," Peaslee stated, "if [LaBranche] was
eligible for rehire and I stated she was not."  Id. at 19.
According to Peaslee, that was the substance of her conversation
about LaBranche.  See id.

Several months later, in December 2014, LaBranche brought
this lawsuit against Frisbie, Themelis, O'Connell, and Peaslee,

for FMLA violations, defamation, and negligent infliction of emotional distress.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must consider the evidence submitted in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first show that there is no genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.   ANALYSIS

The Family Medical Leave Act entitles eligible employees to "a total of 12 workweeks of leave during any 12-month period" for, among other things, "a serious health condition" that makes the employee unable to work.  29 U.S.C. § 2612(a)(1)(D).  As a general rule, when an employee returns from FMLA leave, "her employer must reinstate her to the same or an equivalent position, without any loss of accrued seniority." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014); see 29 C.F.R. § 825.214.

Claims for violations of the FMLA generally fall into one of two categories: interference or retaliation.  See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005).  Interference claims are rooted in the text of the FMLA, which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of" an employee's FMLA rights.  29 U.S.C. § 2615(a)(1).  Retaliation claims find their source in Department of Labor regulations, which prohibit employers from "discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights."[6]  29 C.F.R. § 825.220(c).  For example, "an

---

[6] The text of 29 U.S.C. § 2615 does not specifically mention "retaliation," and appears to prohibit only "interference" and "discrimination." See 29 U.S.C. § 2615; Colburn, 429 F.3d at

employer cannot regard the taking of FMLA leave as a negative

factor in deciding to terminate an employee." Henry v. United

Bank, 686 F.3d 50, 55 (1st Cir. 2012) (citing 29 C.F.R. §

825.220(c)).

Each cause of action has distinct elements.  To prove

interference, "a plaintiff need only show, by a preponderance of

the evidence, entitlement to the disputed leave; no showing as

to employer intent is required." Colburn, 429 F.3d at 331.

"The key issue is simply whether the employer provided its

employee the benefits to which she was entitled per the FMLA."[7]

Carrero-Ojeda, 755 F.3d at 722 (citing Hodgens v. Gen. Dynamics

---

331 (acknowledging that "the text . . . makes no reference to
'retaliation.'").  Courts have nonetheless "recognized such a
cause of action in the statute and specifically the
interpretative regulation 29 C.F.R. § 825.220(c)." Colburn, 429
F.3d at 331.  Indeed, the Colburn court noted that "[a]s best as
we can tell, all circuits recognize a cause of action for
retaliation.  Most ground it in 29 U.S.C. § 2615(a)(1) and (2)
and attendant regulations." Id. at 331 n.2.

[7] The First Circuit in Carrero-Ojeda pointed out that other
circuits describe interference claims more substantially,
requiring an employee to prove five elements: "(1) she was
eligible for the FMLA's protections; (2) her employer was
covered by the FMLA; (3) she was entitled to leave under the
FMLA; (4) she gave her employer notice of her intention to take
leave; and (5) her employer denied her FMLA benefits to which
she was entitled." Carrero-Ojeda, 755 F.3d at 722 n.8 (citing
Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012);
Goelzer v. Sheboygan Cty., Wis., 604 F.3d 987, 993 (7th Cir.
2010)).  The Carrero-Ojeda court declined to apply this full
standard because, in that case, "most of these elements [were]
undisputed." Id.  I follow the same approach here.

Corp., 144 F.3d 151, 159 (1st Cir. 1998)).  In contrast,

retaliation claims turn on "the employer's intent – i.e., why

the employer fired or acted against the employee."  Id. at 719

(emphasis in original).  To prove retaliation, a plaintiff must

show that "(1) he availed himself of a protected right under the

FMLA; (2) he was adversely affected by an employment decision;

(3) there is a causal connection between the employee's

protected activity and the employer's adverse employment

action."  Hodgens, 144 F.3d at 161.

   LaBranche brings claims under the FMLA for both

interference and retaliation, along with state law claims for

defamation and negligent infliction of emotional distress.[8]

Because genuine disputes of fact remain with respect to

LaBranche's FMLA claims, I deny summary judgment as to these

claims.  I grant, however, summary judgment with respect to

LaBranche's state law claims, because she has not produced

sufficient admissible evidence that would entitle her to the

relief she seeks.  I consider each claim in turn below.

---

[8] LaBranche's complaint also includes a fifth claim, entitled
"Respondeat Superior Liability."  Doc. No. 1 at 13-14.  Because
I presume that LaBranche's lawsuit generally seeks to hold the
hospital vicariously liable for the actions of its employees, I
see no reason to discuss this as a separate claim.

**1. Interference**

LaBranche first brings a claim for interference with her FMLA rights.  She bases this claim on two separate theories of recovery.  First, she argues that Frisbie interfered with her FMLA rights by failing to properly notify her of a) whether her FMLA leave had been approved, or b) how much FMLA leave she had remaining when it approved her request for leave.  Second, she contends that Frisbie interfered with her FMLA rights by terminating her while she remained on FMLA-protected leave.

**a. Lack of Notice**

I begin with LaBranche's claim that Frisbie did not provide adequate notice.  The FMLA's interpretive regulations require employers to provide certain notices to employees of their FMLA rights.  According to the First Circuit:

> [W]hen an employer "acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). This is known as an eligibility notice. Once the employer "has enough information to determine whether the leave is being taken for a[n] FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances." Id. § 825.300(d)(1). This is known as a designation notice.

Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 422–23 (1st Cir. 2014).  Employers must therefore ordinarily

provide two types of notice – an eligibility notice and a

designation notice.[9]  Failing to provide either notice "may

constitute an interference with, restraint, or denial of the

exercise of an employee's FMLA rights."[10]  29 C.F.R. §

825.300(e); Lupyan v. Corinthian Colls. Inc., 761 F.3d 314, 318

---

[9] Some courts have stated that employers must also provide a
"rights and responsibilities notice" pursuant to 29 C.F.R. §
825.300(c).  See, e.g., Vannoy v. Fed. Reserve Bank of Richmond,
No. 14-2375, 2016 WL 3536656, at *3 (4th Cir. June 28, 2016)
("There are two types of individualized notice that the employer
must give an employee who may be entitled to FMLA leave: a
'rights and responsibilities notice,' [29 C.F.R.] § 825.300(c);
and a 'designation notice,' id. § 825.300(d).").  It appears,
however, that employers may provide information of employees'
rights and responsibilities along with their eligibility in the
same notice – which is what Frisbie claims it did here.  See
Doc. No. 19-11 at 3-5 (Frisbie's "Notice of Eligibility and
Rights & Responsibilities") (emphasis added).

[10] The Supreme Court held in Ragsdale v. Wolverine World Wide,
Inc. that failure to provide notice can only constitute
interference if the employee shows that she was prejudiced by
the lack of notice.  See 535 U.S. 81, 89 (2002) (noting that "§
2617 provides no relief unless the employee has been prejudiced
by the violation"); see also Vannoy, 2016 WL 3536656, at *4 ("An
FMLA notice violation can be an actionable interference claim
for which an employee may recover, so long as he makes a showing
of prejudice flowing from the violation.").  Here, although
Frisbie does not argue that LaBranche was not prejudiced, it
does state in passing that she "has provided no evidence that
she was able to return to work at the expiration of her FMLA
protected leave."  Doc. No. 21 at 6.  This is incorrect:
LaBranche's declaration states that if given the opportunity,
she "would have obtained a medical release to return to work"
and could have been seen by either of her doctors before her
FMLA leave expired.  Doc. No. 19-17 at 3.  As such, I see no
reason to further discuss the issue of prejudice.

(3d Cir. 2014) ("Failure to provide the required notice can constitute an interference claim.").

Here, LaBranche argues first that she never received the designation notice for her December 2013 leave.  She concedes that she received the <u>eligibility</u> notice and Lord's letter conditionally approving her FMLA leave on December 11, 2013. Doc. No. 19-17 at 3.  In her declaration, however, she denies ever receiving the <u>designation</u> notice granting full approval, which Frisbie alleges was sent on December 24, 2013.  <u>Id.</u> According to LaBranche, the fact that she never received this designation notice constitutes interference with her FMLA rights.

Frisbie counters that LaBranche must have received the designation notice because she admitted as much during her deposition.  <u>See</u> Doc. No. 21 at 3-4.  During LaBranche's deposition, Frisbie attorney K. Joshua Scott asked her the following questions:

> Q.  I'm going to show you a letter dated December 24th, 2013 and ask if you recognize it.
> A. (Reviewing 12-24-13 letter.)  I don't remember if I got this or not.
> Q.  Well, do you recall ever being notified that you had been approved for your FMLA leave?
> A.  Yes, because I had got something in the mail.  I think I gave it to you.  (Referencing Attorney Connolly.)
> Q.  So you were aware that your leave had been approved?
> A. Yes.

Doc. No. 19-10 at 24.  According to Frisbie, this exchange shows that LaBranche received the designation notice, and therefore contradicts her declaration that she did not.  See Doc. No. 21 at 4.

LaBranche vehemently disagrees.  According to LaBranche, when she mentioned in her deposition that she "had got something in the mail," she was referring to Lord's December 11th letter and eligibility notice, not the letter and designation notice that Frisbie allegedly sent on December 24th.  Doc. No. 19-17 at 3.  LaBranche "understood that [Dec. 11th] letter as having approved my FMLA."  Id. (emphasis added).  Moreover, LaBranche claims, the letter Scott showed her during the deposition was Lord's letter about short-term disability benefits, Doc. No. 27-2 at 1, not the designation notice, id. at 2, which she maintains she never received.[11]

---

[11] Frisbie does not argue, and the parties do not discuss, the possibility that Frisbie would be entitled to a presumption that the designation form was received under the common law "Mailbox Rule."  See Lupyan, 761 F.3d at 319-23 (discussing at length the Mailbox Rule in the context of an FMLA interference claim for lack of adequate notice).  As the Lupyan court explained, the Mailbox Rule provides that if a party places a properly-addressed letter in the mail, it is entitled to a presumption that the letter was received by the person to whom it was addressed.  Id. at 319.  This presumption is rebuttable, however, and becomes "weaker" when a letter is not sent via certified mail.  Id.  Here, Frisbie has produced no evidence that it sent the designation notice by certified mail, and LaBranche has provided sufficient evidence to rebut the "weak[]presumption" to which Frisbie is entitled for delivery via

Although Frisbie protests that LaBranche's assertions are "gamesmanship," I nonetheless find them plausible. As I recently pointed out in Gage v. Rymes Heating Oils, Inc., "[f]ew deponents are trained lawyers" and many "make honest mistakes, forget pertinent facts, and misunderstand the significance of the questions being asked." 2016 DNH 038, 16. I must, moreover, consider the record in the light most favorable to LaBranche. As such, the record demonstrates a genuine factual dispute about whether the designation notice was ever received.[12]

---

regular mail. See id. at 320 (noting that the "weak rebuttable presumption" created by the mailing of a letter under regular mail without direct evidence of receipt "is not sufficient to establish receipt as a matter of law and thereby entitle [the employer] to summary judgment.").

[12] The so-called "sham affidavit rule" prevents parties from "creat[ing] a conflict and resist[ing] summary judgment with an affidavit that is clearly contradictory" to prior deposition testimony. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994). This rule applies, however, only "[w]hen an interested witness has given clear answers to unambiguous questions" during the original deposition and "does not give a satisfactory explanation" of why she changed her testimony after the fact. See id. This case fulfills neither of these conditions. First, Scott's questioning was arguably ambiguous, since two similar notices were allegedly sent within a short period of time and might be confused. See Doc. No. 19-10 at 24. And LaBranche's answers were far from clear, as she stated that she did not remember what she got in the mail ("I don't remember if I got this or not"), or what she did with it ("I think I gave it to you"). See id. Second, LaBranche has furnished "a satisfactory explanation" of why her testimony changed by explaining that she confused the Dec. 24th notice with the Dec. 11th letter. See also Lupyan, 761 F.3d at 320 ("a single, non-conclusory affidavit or witness's testimony, when

19

Frisbie nonetheless argues that even if LaBranche never received the designation notice, the Dec. 11th eligibility letter provided her with all the notice it was required to give. This argument also misses the mark.  The regulations require employers to "notify the employee whether the leave will be designated and will be counted as FMLA leave" – i.e., provide a designation notice.  29 C.F.R. § 825.300(d)(1).  Yet Frisbie's Dec. 11th letter did not conclusively designate LaBranche's leave as FMLA-qualifying.  Instead, the letter informed LaBranche that her "period of absence will be conditionally designated" as FMLA leave, "pending the return of the completed Certification . . . ."  Doc. No. 19-11 at 2 (emphasis added). The attached form further stated: "in order for us to determine whether your absence qualifies as FMLA leave, you must return [sufficient certification] to us by December 26, 2013."  Id. at 4 (emphasis in original omitted).  This language makes clear that as of Dec. 11th, Frisbie had not yet "designated" LaBranche's leave as FMLA-qualifying and required further certification from LaBranche's doctor before doing so.  As such,

_____

based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.").

20

Frisbie's Dec. 11th notice was not sufficient to satisfy its
obligations under 29 C.F.R. § 825.300(d)(1).

Finally, as stated above, LaBranche alternately claims that
Frisbie failed to notify her in the designation notice how many
"hours, days, or weeks" would be counted against her FMLA leave
entitlement.  See Doc. No. 19-1 at 13-15.  Because a genuine
factual dispute persists as to whether LaBranche ever received a
designation notice, however, I need not resolve that issue.[13]

### b. Whether LaBranche had FMLA leave remaining

LaBranche also argues that Frisbie interfered with her FMLA
rights by terminating her while she remained on FMLA-protected
leave.  She claims that when Frisbie terminated her on January
9, 2014, she had at least 16.25 hours of FMLA leave remaining,
and therefore the termination interfered with her right to
reinstatement under the FMLA.  Doc. No. 19-1 at 1.  Frisbie
denies this.  According to Frisbie, LaBranche's leave expired on
January 9th and her claim that she had 16.25 hours of leave
remaining is a "mathematical miscalculation."  Doc. No. 21 at 1.

---

[13] The parties further debate whether Frisbie had the obligation
to "ascertain" whether LaBranche planned on returning to work
and whether Frisbie had an obligation to tell LaBranche when her
leave would expire.  See Doc. Nos. 12-1 at 13-14; 19-1 at 13-15;
21 at 4-6.  I do not reach these issues for the same reasons as
described above.

This disagreement reveals a simple dispute of fact that precludes summary judgment on this claim.  As evidence that she had FMLA leave remaining, LaBranche points to a payroll document obtained from Frisbie that included handwritten notations by Lord, the benefits manager.  Doc. Nos. 19-12 (document); 12-4 at 19 (Lord admission).  Lord's notations stated that LaBranche was "out 12/11/13" and "176.25 FMLA remains until 1/24/14."  Doc. No. 19-12.  According to LaBranche, those notations show that Lord – who claimed to be "carefully tracking" LaBranche's FMLA leave – calculated that LaBranche remained on FMLA leave until January 24th, not January 9th.

Frisbie has not provided evidence to rebut this claim.  It argues that LaBranche miscalculated her FMLA leave, and insinuates that she may have incorrectly excluded holidays from her calculations, but does not address Lord's notations on the payroll document.  See Doc. No. 21 at 2-3.  Moreover, Frisbie has not produced time records or FMLA leave records that establish that LaBranche's leave had ended.  As such, LaBranche has shown that a genuine factual dispute exists as to whether she was terminated while on FMLA leave.  Accordingly, I deny summary judgment on this issue.[14]

---

[14] Frisbie further argues that even if LaBranche remained on FMLA leave on January 9th, she was not released to work until February 11, 2014, long after her leave expired, and never

22

**2. Retaliation**

LaBranche next brings a claim for retaliation.  She argues
that Frisbie terminated her for taking FMLA leave, and contends
that Frisbie's stated reasons for her termination were "merely a
pretext for retaliatory animus."  Doc. No. 1 at 11.  Frisbie
counters by arguing that LaBranche's termination had a
legitimate basis: the hospital needed "to fill a critical
position in the operating room."  Doc. No. 12-1 at 17.  Because
I find that LaBranche has produced sufficient evidence to allow
a reasonable factfinder to infer that her termination was
pretextual, I deny summary judgment on this claim as well.

As stated above, "the FMLA prohibits retaliation against
employees who take FMLA leave."  Pagan-Colon v. Walgreens of San
Patricio, Inc., 697 F.3d 1, 8 (1st Cir. 2012).  To make out a
prima facie case of retaliation, an employee must show: "(1) she
availed herself of a protected FMLA right; (2) she was adversely

---

notified Frisbie that she intended to return to work.  See Doc.
No. 12-1 at 14.  These facts are irrelevant to the issue here.
Interference claims hinge on whether an employer provided its
employees with the FMLA benefits to which they were entitled;
failure to do so may constitute interference.  See Carrero-
Ojeda, 755 F.3d at 722.  As such, if LaBranche was terminated
while on FMLA-protected leave, it does not matter whether her
doctor had stated that she was cleared to work, or whether she
had explicitly told Frisbie that she intended to return.  The
act of termination while FMLA benefits remained itself
constituted interference.  See id.

affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." Carrero-Ojeda, 755 F.3d at 719 (internal quotations and alterations omitted).

Here, there is no dispute about the first two elements. LaBranche plainly availed herself of "a protected FMLA right" – unpaid medical leave – and suffered an adverse employment action – being terminated. Her claim therefore hinges on whether there was a causal connection between LaBranche taking FMLA leave and her termination – i.e., whether she was fired for taking leave.

To establish a causal connection, an employee must show that the employer intended to retaliate against her for taking FMLA leave. Id. at 722. In cases where the employee provides no direct evidence of retaliatory intent, courts rely on the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Pagan-Colon, 697 F.3d at 9. Under the McDonnell Douglas framework, the employee must first establish a prima facie case of discrimination. Hodgens, 144 F.3d at 160-61. If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to provide a non-discriminatory reason for the adverse employment action. Id. If the employer satisfies this burden, the burden shifts back to the employee to show that employer's stated reason for

24

the adverse employment action was a pretext for discrimination.
Id.

LaBranche has sufficiently carried her burden to survive
summary judgment.  She cites a number of facts to support her
prima facie case, the most relevant of which I recite here.
First, she highlights Lord's email to O'Connell stating that
LaBranche was "out for two months" and Lord would "take action
on 1/9/14," which could suggest that Frisbie was essentially
lying in wait, preparing to terminate her as soon as her leave
expired.  See Doc. No. 19-14 at 2.  Second, and relatedly, she
points to the temporal proximity of her termination and her
decision to take FMLA leave.  Third, she notes that a counseling
report she received in March 2013, soon after she returned from
her previous FMLA leave, contained a number of criticisms about
her "negative mood" and "lack of positive attitude," which could
suggest a retaliatory motive.  See Doc. No. 19-23 at 2.  Taken
together, these facts satisfy "the relatively low threshold
showing necessary to establish a prima facie case." Hodgens,
144 F.3d at 165-66; see also Kosereis v. Rhode Island, 331 F.3d
207, 213 (1st Cir. 2003) (noting, at least in the Title VII
context, that the prima facie case requires a "small showing"
that is "not onerous" and is "easily made").

The burden then shifts to Frisbie to show it had a legitimate reason for terminating LaBranche, which Frisbie meets by alleging that it needed to fill a critical position in the operating room.  Thereafter, the burden returns to LaBranche to prove that this rationale was purely pretextual.  To support her case, she cites to the facts listed above and also points out that she called Lord the day after receiving her termination letter and told Lord that she was ready, willing and able to return to work.  Lord told her that the decision to terminate was final.  According to LaBranche, this interaction debunks Frisbie's claim that it needed to fill an operating room position – if that were so, it would have gladly taken her back.  Instead, she asserts, she was fired for taking another FMLA leave.  This evidence, along with the rest, is sufficient to establish a trialworthy issue on LaBranche's retaliation claim.  See Hodgens, 144 F.3d at 167 (noting that, in cases where pretext is at issue, "courts must be particularly cautious about granting the employer's motion for summary judgment") (internal punctuation omitted); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (noting that pretext can be shown in a variety of ways, including "temporal proximity of an employee's protected activity to an employer's adverse action, and comments

by the employer which intimate a retaliatory mindset") (internal
citation omitted).

### 3. Defamation

LaBranche next brings a claim for defamation.  She argues
that Frisbie nurse Amanda Peaslee made two defamatory statements
about her to a recruiter.  First, Peaslee allegedly stated that
LaBranche did not "exemplify Frisbie's standards for a good
nurse."  Doc. No. 19-10 at 40-41.  Second, Peaslee allegedly
stated that LaBranche was not eligible for rehire at Frisbie.
Doc. No. 12-8 at 4.  Frisbie counters that a) Peaslee has denied
under oath saying that LaBranche was "not a good example of
Frisbie's standard of a good nurse" and LaBranche has not
produced admissible evidence to support her claim, and b) in any
event, the alleged statements were true, and therefore a defense
to defamation.

I begin with Peaslee's alleged statement to the recruiter
that LaBranche did not "exemplify Frisbie's standards for a good
nurse."  Frisbie argues that Peaslee never made that statement.
Instead, Peaslee claims that the recruiter "asked if
[LaBranche's] nursing skills were 'excellent, standard, or poor'
and I stated standard, or some similar language with options
provided by the recruiter."  Id.  As evidence of this assertion,

Frisbie has submitted a copy of Peaslee's answers to
interrogatories.  Doc. No. 12-8 at 4.

In response, LaBranche offers her own recollection of her
conversation with the recruiter.  She claims that the recruiter
told her that Peaslee had said LaBranche did not "exemplify
Frisbie's standards for a good nurse," which contradicts
Peaslee's interrogatory response and reveals a factual dispute
that precludes summary judgment.  The problem with LaBranche's
argument is that she has not submitted admissible evidence
supporting her version of Peaslee's comments.  She offers no
declaration or affidavit from the recruiter, Jean Beauchamp.  In
fact, when LaBranche asked Beauchamp if she would put her
recollection of Beauchamp's conversation with Peaslee in
writing, Beauchamp refused, saying that "it's the company's
policy not to do that, not to get involved."  Doc. No. 12-3 at
24.  As a result, LaBranche's only evidence of Peaslee's
statement is her own testimony of what Beauchamp told her
Peaslee said.  Yet this testimony would be hearsay.  It would
recount an out-of-court statement – "Peaslee told me that
LaBranche did not meet Frisbie's standard of a good nurse" – and
would be introduced for the truth it asserts – that Peaslee said

those words to Beauchamp.  See Fed. R. Evid. 801(c).  As such,
this is hearsay, and would not be admissible at trial.[15]

Rule 56 requires more from LaBranche here.  To support a
contention that summary judgment must be denied because a fact
material to the resolution of the motion is in genuine dispute,
the Rule obliges the non-moving party to "cit[e] to particular
parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or
declarations, stipulations . . . admissions, interrogatory
answers, or other materials."  Fed. R. Civ. P. 56(c).  LaBranche
has failed to cite any such materials here, offering only her
own hearsay statement as evidence of Peaslee's allegedly
defamatory comment.  Yet "[i]t is black-letter law that hearsay
evidence cannot be considered on summary judgment for the truth
of the matter asserted."  Hannon v. Beard, 645 F.3d 45, 49 (1st
Cir. 2011) (internal quotations omitted); see also Evergreen
Partnering Grp., Inc. v. Pactiv Corp., No. 15-1839, 2016 WL

---

[15] LaBranche argues that this statement falls into any of three
hearsay exceptions, but her arguments are unpersuasive.  She
claims that the statement is "not being offered for the truth of
the matter asserted; it is being offered for its falsity," but
this argument fails because – among other reasons – it focuses
on Peaslee's statement to Beauchamp, rather than Beauchamp's
statement to LaBranche.  See Doc. No. 19-1 at 22.  Her arguments
that the comment falls into the exceptions for statements about
a person's reputation and admissions by a party opponent are
unelaborated and also fail.

4087783, at *9 (1st Cir. Aug. 2, 2016).  Thus, because LaBranche
cannot point to any admissible evidence that this statement was
ever made, she cannot rely on it to defeat Frisbie's motion for
summary judgment.

Peaslee's other comment – that LaBranche "was not eligible
for rehire" – cannot support a defamation claim because
LaBranche has failed to contest Frisbie's assertion that the
statement was true.  Carol Themelis, the Frisbie human resources
executive, stated under oath that Frisbie would not have
considered an application for re-employment by LaBranche.  Doc.
No. 21-2 at 1.  LaBranche can point to no evidence that
contradicts this statement.  Since truth is a defense to
defamation, see Faigin v. Kelly, 978 F. Supp. 420, 425 (D.N.H.
1997) ("One who publishes a defamatory statement of fact is not
subject to liability for defamation if the statement is true."),
Frisbie is entitled to summary judgment with respect to this
aspect of the defamation claim as well.

## 4. Negligent Infliction of Emotional Distress

LaBranche lastly asserts a claim for negligent infliction
of emotional distress.  She argues that O'Connell and Peaslee
negligently inflicted emotional distress when they "erroneously
described her job performance," in work evaluations and in

30

Peaslee's alleged statements to the recruiter.  <u>See</u> Doc. No. 1 at 12-13.

To make out a negligent infliction of emotional distress claim, the plaintiff must show: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (internal quotation marks omitted).  Thus, to make out a negligent infliction claim, the plaintiff must prove "physical manifestations of the distress."  Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 98 (D.N.H. 2011).

Here, LaBranche has failed to put forward admissible evidence of "objective physical symptoms" of emotional distress. She states in her summary judgment papers that she was "[s]hocked and upset" by Peaslee's comments to the recruiter, but provides no evidence to support that claim.  Doc. No. 19-1 at 10.  In fact, the sole medical statement LaBranche submitted, from her psychiatrist David Schmidt, noted that LaBranche "was doing well enough [by February 2014] that she did not want to pursue more aggressive medical management of her depression and was interested in pursuing job opportunities."  Doc. No. 19-19

at 3.  Without more, LaBranche's argument fails, and I grant summary judgment on this claim.

### IV.   CONCLUSION

Frisbie's motion for summary judgment (Doc. No. 12) is granted as to Count III (defamation) and Count IV (negligent infliction of emotional distress), and denied as to all other counts.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 17, 2016

cc:  Counsel of Record